IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELVIN PRICE DUTTON, III     :     CIVIL ACTION
                         :
      v.             :
                         :
DONALD T. VAUGHN, et al.     :     No. 02-2686

## REPORT AND RECOMMENDATION

PETER B. SCUDERI
UNITED STATES MAGISTRATE JUDGE               November    , 2002

      This is a <u>pro se</u> petition for writ of habeas corpus filed pursuant to 28 U.S.C. §

2254 by Melvin Price Dutton, III ("Petitioner"), an individual currently incarcerated at the

State Correctional Institute in Graterford, Pennsylvania.  For the reasons that follow, I

recommend that the petition be denied.

I.      **FACTS AND PROCEDURAL HISTORY**

      The Pennsylvania courts have summarized the relevant facts as follows:

> On June 16, 1995, [Petitioner's son] R.D. was sitting at the kitchen table doing his ABC's when [Petitioner] hit him on the head and the chair and R.D. fell over, causing R.D. to hit his head on the floor. The child was then taken to Petitioner's bedroom where he was beaten on the buttocks with a paddle and a large thick belt and also hit in the stomach by Petitioner.  After the beating, Petitioner saw that R.D. was loosing [sic] consciousness and tried to revive him. When his efforts failed, an ambulance was called and R.D. was admitted to the hospital where he spent twelve [12] days because of kidney and liver impairments, both of which were life threatening. The kidney and liver impairments were caused by the beating on the buttocks and blunt trauma such as a beating or punch to the abdomen which occurred within twenty-four [24] to forty-eight [48] hours of the date of his admission.  Bruising on R.D.'s buttocks, which was severe and extreme, was caused by either a belt or a paddle and not a single spank of the hand.  Petitioner's sister and V.I. (Vincent Mayo) testified that they had observed . . . Petitioner paddling and using

other harsh forms of "discipline" in the past.

Commonwealth v. Dutton, Chester Co. No. 2592-95 (C.C.P. Nov. 13, 2000).

On April 12, 1996, after a bench trial before the Honorable Paula Francisco Ott, Court of Common Pleas of Chester County, Petitioner was found guilty of aggravated assault, simple assault, endangering the welfare of a child, and recklessly endangering another person. On June 17, 1996, Judge Ott sentenced Petitioner to five (5) to ten (10) years of imprisonment for the aggravated assault conviction, and a concurrent sentence of six (6) months to twelve (12) months of imprisonment on the endangering the welfare of a child conviction. Petitioner was represented at trial and sentencing by private counsel.

Following Petitioner's conviction and sentence, he obtained representation from the Public Defender of Chester County. The Public Defender filed a post sentence motion for acquittal and a new trial, which was denied on October 18, 1996. The Public Defender then filed a timely appeal with the Pennsylvania Superior Court, challenging the sufficiency of the evidence, the admission of testimony regarding prior bad acts, and raising two (2) claims of ineffectiveness of trial counsel. On July 9, 1997, the Superior Court affirmed the judgment of sentence. Commonwealth v. Dutton, 701 A.2d 776 (Pa. Super. 1997) (table). Counsel filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on September 2, 1998. Commonwealth v. Dutton, 727 A.2d 1117 (Pa. 1998) (table).

On June 14, 1999, Petitioner filed a pro se application for collateral relief pursuant

2

to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 et seq. Appointed counsel filed amended petitions on November 1, 1999, and February 15, 2000, raising multiple claims of ineffectiveness of trial and appellate counsel. After holding two (2) hearings on Petitioner's petition, the PCRA court denied relief on November 13, 2000. Commonwealth v. Dutton, Chester Co. No. 2592-95 (C.C.P. Nov. 13, 2000).

Petitioner appealed the denial of his PCRA petition to the Pennsylvania Superior Court, and presented the following claims:

1. Ineffectiveness of trial counsel for failing to investigate or call as a witness social worker Ruth Palotta, to whom R.D. disclosed an alternative perpetrator;

2. Ineffectiveness of trial counsel for insufficiently cross-examining Detective Carroll regarding suggestive interviewing techniques with R.D.; and

3. Ineffectiveness of trial counsel for insufficiently cross-examining Dr. Frankel regarding R.D.'s prior inconsistent statements.

On February 26, 2002, the Superior Court affirmed the denial of Petitioner's PCRA petition. Commonwealth v. Dutton, No. 3479 EDA 2000 (Pa. Super. Feb. 26, 2002) (memorandum opinion). Petitioner did not petition the Supreme Court of Pennsylvania for an allowance of appeal.

On April 26, 2002,[1] Petitioner filed the instant pro se petition for writ of habeas

---

[1] Generally, a pro se petitioner's habeas petition is deemed filed at the moment he delivers it to prison authorities for mailing to the district court. Burns v. Morton, 134 F.3d 109, 113 (3d

corpus, raising the following claims:

1.      Ineffectiveness of trial counsel for failing to call Dr.
        DiGiacomo and Ms. Palotta, a social worker, regarding
        statements made by R.D. that implicated a different
        perpetrator; for failing to cross-examine Dr. Frankel and
        Detective Carroll regarding suggestive interview techniques
        and alleged prior inconsistent statements made by R.D.; and
        for failing to call an expert witness;

2.      Ineffectiveness of appellate counsel for failing to include a
        copy of Dr. DiGiacomo's deposition as part of the court
        record on appeal to the Pennsylvania Superior Court, and for
        failing to raise all claims of ineffectiveness of trial counsel;

3.      Ineffectiveness of PCRA counsel for failing to layer
        ineffectiveness of all prior counsel;

4.      Violation of due process when the trial court admitted R.D.'s
        allegedly coerced testimony into evidence;

5.      Violation of due process when the trial court excluded
        testimony concerning statements R.D. made to physicians,
        nurses and a social worker; and

6.      Violation of due process when the trial court allowed
        allegedly perjured testimony from trial counsel during post-
        trial hearings.

## II.    APPLICABLE LAW

_____The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became

effective on April 24, 1996, amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254.  Werts v. Vaughn, 228 F.3d 178,

---

Cir. 1998) (citing Houston v. Lack, 487 U.S. 266 (1988)).  Because Petitioner dated his habeas
petition April 26, 2002, we assume that he presented his petition to prison authorities on that
date.

195 (3d Cir. 2000).  The AEDPA increases the deference federal courts must give to the

factual findings and legal determinations of the state courts.  Id. at 196 (citing Dickerson

v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).  Pursuant to 28 U.S.C. § 2254(d), as amended

by the AEDPA, a petition for habeas corpus may only be granted if (1) the state court's

adjudication of the claim resulted in a decision contrary to, or involved an unreasonable

application of, "clearly established Federal law, as determined by the Supreme Court of

United States;" or if (2) the adjudication resulted in a decision that was "based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual issues determined by a state court

are presumed to be correct and the petitioner bears the burden of rebutting this

presumption by clear and convincing evidence.  Werts, 228 F.3d at 196 (citing 28 U.S.C.

§ 2254(e)(1)).

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S.

362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the Supreme] Court has on a set of materially indistinguishable

facts."  Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams,

529 U.S. at 389-390).  The Court in Williams further stated that "[u]nder the

'unreasonable application' clause, a federal habeas court may grant the writ if the state

court identifies the correct legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Id.  The

"unreasonable application" inquiry requires the habeas court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable." Id.

(citing Williams, 529 U.S. at 388-389).  "In further delineating the 'unreasonable

application of' component, the Supreme Court stressed that an unreasonable application

of federal law is different from an incorrect application of such law and a federal habeas

court may not grant relief unless that court determines that a state court's incorrect or

erroneous application of clearly established federal law was also unreasonable." Werts,

228 F.3d at 196 (citing Williams, 529 U.S. at 389). ____

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel

Petitioner raises numerous claims of ineffectiveness of trial counsel, appellate

counsel, and PCRA counsel.  Claims of ineffective assistance of counsel are governed by

Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme

Court set forth the standard for a petitioner seeking habeas relief on the grounds of

ineffective assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687.

Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams, 529 U.S. at 391. Thus, Petitioner is entitled to relief if the Pennsylvania courts' decision rejecting his claim of ineffective assistance of counsel was either "contrary to, or involved an unreasonable application of," that established law.[2] Id.

---

[2]Upon analyzing the law set forth by the Pennsylvania courts, we find that they did not apply a rule that contradicts the Supreme Court's holding in Strickland. See Werts, 228 F.3d at 204. The Pennsylvania Supreme Court has held that the Pennsylvania standard judging ineffectiveness claims is identical to the ineffectiveness standard enunciated by the United States Supreme Court in Strickland. Id. at 203 (citing Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987)).

> **1.    *Ineffectiveness of Trial Counsel for failing to call Dr. DiGiacomo and Ms. Palotta, a social worker, regarding statements made by R.D. that implicated a different perpetrator***

Plaintiff first argues that trial counsel was ineffective for failing to call Dr. DiGiacomo and Ms. Palotta regarding statements made by R.D. that allegedly implicated a different perpetrator, specifically his uncle, Victor L. Mayo ("Uncle V.I."). Petitioner raised the first part of this claim on direct appeal, and the second part on collateral appeal. Therefore, we will reach the merits of both aspects of this claim.

In addressing the issue of trial counsel's decision not to call Dr. Giacomo regarding certain statements made by R.D., the Pennsylvania Superior Court stated:

> [A]t trial, Detective Donna Carroll testified that R.D.'s medical records contained a note indicating that R.D. had stated that . . . Uncle V.I. had punched him in the stomach. Additionally, [Uncle V.I.] tetsified that he had previously hit or punched R.D. in a playful manner. Mayo also testified that he was not present when the June 15, 1995 beating occurred. Next . . . R.D. testified that he was alone with [Petitioner] on the night of the beating, and that [Petitioner] was the person who injured him. At the ineffectiveness hearing, Dr. DiGiacomo's deposition was admitted into evidence. Finally, at the ineffectiveness hearing, trial counsel . . . testified that he did not speak with Dr. DiGiacomo about R.D.'s statement because "I suspected that my cross-examination of Detective Carroll would sufficiently make this point."

Commonwealth v. Dutton, 4023 PHL 96, at 8-9 (Pa. Super. July 9, 1997) (citations to the Record omitted). Based on the evidence of record, including R.D.'s other statements, the medical records, and trial testimony, the Superior Court found that Petitioner failed to establish that he was prejudiced by the absence of Dr. DiGiacomo's testimony. Id. at 9.

In addressing the issue of trial counsel's decision not to call Ms. Palotta regarding certain statements made by R.D., the PCRA court stated:

> Petitioner's . . . allegation that trial counsel was ineffective for not investigating, interviewing, or calling Ruth Pallota to testify, is without merit.  Counsel cannot be deemed ineffective for failing to call a witness whose testimony is merely cumulative to corroborate statements by the victim that Uncle V.I. "hit" him.  Petitioner concedes that Ms. Pallota only offered corroboration of the victim's statements.  This Judge was very aware, from the testimony of both [Uncle] V.I. and the victim, that V.E. had "hit" R.D. in the past.  The testimony of Ruth Pallota was not necessary to corroborate this fact.  The issue for this fact finder was whether the "hit" was an assault or "rough-housing," and whether [Uncle] V.I. had access to the victim in the crucial 24-48 hours prior to hospitalization.  Evidence was presented and accepted by this fact finder that [Uncle] V.I. did not see the victim on the day he was hospitalized, rendering any testimony by Ms. Pallota regarding R.D.'s statement cumulative at best.  Additionally, the Judge believed the testimony of both the victim and [Uncle] V.I. that any prior physical contact between the two was only playful punching.  As a result, any claim of ineffectiveness for failing to investigate or call Ms. Pallota is without merit.

Commonwealth v. Dutton, Chester Co. No. 2592-95, at 3-4 (C.C.P. Nov. 13, 2000). The PCRA Court's reasoning was specifically adopted by the Pennsylvania Superior Court.  Commonwealth v. Dutton, No. 3479 EDA 2000, at 6-7 (Pa. Super. Feb. 26, 2002).

We find no fault with the reasoning of the state courts.  Under Pennsylvania law, to obtain relief on a claim of ineffectiveness based on counsel's failure to call a defense witness, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel knew or should have known of the witness' existence; (4) the witness was prepared to cooperate and to testify at trial; and (5) the absence of this

testimony so prejudiced the petitioner as to deny a fair trial.  See Commonwealth v.

Petras, 534 A.2d 483, 485 (Pa. Super. 1987); see also Orban v. Vaughn, 1996 WL

646746, *11 (E.D. Pa. Nov. 6, 1996), overruled on other grounds, 123 F.3d 727 (3d Cir.

1997) (approving Petras standards as consistent with Strickland).  Here, although

Petitioner showed that the witnesses existed, that they were available, and that counsel

was aware of their existence, these facts did not direct the conclusion that the absence of

their testimony denied Petitioner a fair trial.

Both Dr. DiGiacomo and Ms. Palotta prepared reports indicating that R.D. had

stated that Uncle V.I. had hit him.[3]  Trial counsel testified that his strategy was to admit

that Petitioner disciplined his child by spanking, but to undermine the credibility of Uncle

V.I. by revealing that he had hit R.D.  (N.T. 9/27/96, 15).  At trial, counsel questioned

Uncle V.I. about R.D.'s statement to Dr. DiGiacomo, and indirectly raised the statement

again during his cross-examination of Detective Carroll.  (N.T. 4/12/96, 127, 290-291).

Unfortunately for Petitioner, the trial testimony was not favorable.  Uncle V.I. admitted

that he had "hit" R.D. in the past, but testified that the hitting was nothing more than

playful punching or roughhousing.  (N.T. 4/11/96, 127).  Also at trial, R.D. denied

---

[3]Dr. Giacomo reported that when R.D. was asked whether anyone had ever hit him, he responded by stating that Uncle V.I. hit him, and that his father [Petitioner] spanked him when he was very bad.  See Commonwealth v. Dutton, Chester Co. No. 2592-95, at 9 (C.C.P. Oct. 10, 1996).  Ms. Pallota's report included the following: "When asked if anyone hits him, [R.D.] states he [sic] Uncle V.I. does.  He hit him in the stomach. [R.D.] states his Uncle V.I. watches him when his father is at work."  See Commonwealth v. Dutton, Chester Co. No. 2592-95, at 4 (C.C.P. Nov. 13, 2000).  Subsequently, R.D. made statements to various health care providers and investigators indicating that Petitioner was responsible for the assault at issue.

making the statement as written in Dr. DiGiacomo's report. (Tr. 4/11/96, 75). Instead,

R.D. testified that he had been assaulted by Petitioner, and that he was alone with

Petitioner during the assault. (N.T. 4/11/96, 42-43, 75). In addition, both Uncle V.I. and

Petitioner testified that Uncle V.I. was not in the residence on the day of the assault.

(N.T. 4/11/96, 113, 236-242). Thus, whether or not Uncle V.I. "hit" R.D. in the past

became irrelevant for purposes of Petitioner's trial for the specific assault in question. In

any event, as noted by the PCRA court, the trial judge found any prior physical contact

between R.D. and Uncle V.I. to have been only playful punching and rough-housing.

    As stated in the PCRA court opinion, the trial judge was well aware of statements

that Uncle V.I. had "hit" R.D. in the past, but found that any such contact was outside the

relevant time-frame, and in any event was harmless. Because the doctor and social

worker would have testified regarding statements already introduced by other means,

Petitioner cannot show that trial counsel's decision not to call these witnesses was

prejudicial.[4] Therefore, we find that Petitioner is not entitled to habeas relief for this

claim.

> **2.    *Ineffectiveness of Trial Counsel for failing to cross-examine Dr. Frankel and Detective Carroll regarding suggestive interview techniques and alleged prior inconsistent statements made by R.D.***

    Plaintiff next argues that trial counsel was ineffective for failing to cross-examine

---

[4]Since we have concluded that Petitioner was not prejudiced, we need not determine whether trial counsel acted deficiently. See Strickland, 466 U.S. at 697 (stating "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one").

Dr. Frankel and Detective Carroll regarding suggestive interview techniques and alleged

prior inconsistent statements made by R.D.  In discussing both aspects of this claim, the

PCRA court stated the following:

> The second claim of ineffective assistance of counsel is for failing to
> cross-examine Dr. Frankel on statements by R.D. to Dr. DiGiacomo
> and Ruth Palotta about Uncle V.I., contained in the medical records.
> The issue presented in this claim contains a question of multiple
> layered hearsay in the medical records and whether appropriate
> exceptions [to the hearsay rule] would have allowed Dr. Frankel to
> testify to R.D.'s statements.  Under prevailing case law at the time of
> trial, statements of causation in a medical record were only
> admissible if pertinent to medical condition or treatment.  In her
> capacity as an expert witness, Dr. Frankel could rely on hearsay if as
> an expert she would reasonably rely on such information in
> formulating her opinions.  Petitioner has not shown that the
> statements were pertinent to medical treatment or diagnosis.  The
> note of Ruth Pallota was made three [3] days after admission and
> states "injuries are suspicious for child abuse."  The last statement in
> the note is "will follow up with Children and Youth."  Read in its
> entirety, the note is that of a social worker performing her statutory
> duty to investigate suspicious injuries.  Since the statements of R.D.
> contained in the medical record would have been excluded as
> hearsay, Petitioner's underlying allegation that trial counsel was
> ineffective for failing to cross-examine Dr. Frankel about these
> statements is without merit.
>
> * * * *
>
> Prior to trial, [trial counsel] reviewed Detective Carroll's interviews
> with R.D., and recognized possible suggestive techniques.  [Trial
> counsel] reasonably determined that the "suggestions" offered by
> Mr. Talkin at the interview were not adopted by R.D.  [Trial counsel]
> properly chose to attack Detective Carroll's suggestive interview
> techniques both with her and with R.D.  This Judge found [trial
> counsel] to have effectively raised the issue of the suggestive nature
> of the questioning of the victim and gave it consideration in
> determining the credibility of the victim.  Any allegation that failure

to cross-examine Detective Carroll on the presence and unadopted suggestions of Mr. Talkin is without merit.

Commonwealth v. Dutton, Chester Co. No. 2592-95, at 4-6 (C.C.P. Nov. 13, 2000) (citations to Pennsylvania law excluded). The Pennsylvania Superior Court adopted the reasoning of the PCRA Court. Commonwealth v. Dutton, No. 3479 EDA 2000, at 6-7 (Pa. Super. Feb. 26, 2002).

We find that the decision of the state courts is neither contrary to, nor an unreasonable application of, federal law. See Williams, 529 U.S. at 412-413. First, as to Dr. Frankel, it is clear from the Notes of Testimony that trial counsel repeatedly attempted to question the witness about statements made by R.D. (N.T. 4/11/96, 191-196). However, Judge Ott determined that trial counsel's attempts to elicit the victim's statements through Dr. Frankel were improper on grounds of hearsay.[5] (N.T. 4/11/96, 191-196). Counsel cannot be found to have been ineffective for failing to cross-examine a witness on a particular matter when he in fact attempted to do so, but was prevented from pursuing further questions by the trial judge.

Second, as to the interview technique of Detective Carroll and Mr. Talkin, it is again apparent from the Record that trial counsel attempted to do exactly what Petitioner claims was never done: anticipate, prepare for, and challenge the interview techniques employed by Detective Carroll. Prior to trial, the Commonwealth provided discovery to

---

[5]Nevertheless, as previously discussed, trial counsel was successful in raising the issue of whether Uncle V.I. was responsible for R.D.'s injuries during his cross-examination of Detective Carroll.

13

trial counsel that detailed Detective Carroll's interviews with R.D.  Trial counsel testified

that, upon review of these interviews, he recognized what he believed to be suggestive

interview techniques.  (N.T. 8/23/00, 25-26).  Accordingly, trial counsel thoroughly

questioned Detective Carroll on the issue, and effectively raised the suggestive nature of

the questioning of the victim with the trial judge.  In light thereof, we find that counsel

cannot be deemed ineffective for failing to pursue this issue.

### 3.    *Ineffectiveness of Trial Counsel for failing to call an expert witness on suggestive interview techniques*

Plaintiff next argues that trial counsel was ineffective for failing to call an expert

witness to testify regarding suggestive interview techniques with children.  For the

following reasons, we find that this aspect of Petitioner's ineffectiveness claim is

unexhausted and procedurally defaulted.

A federal court should not entertain a petition for writ of habeas corpus unless the

petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254(b)(1), which

provides in relevant part that "[a]n application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall not be granted unless it

appears that -- (A) the applicant has exhausted the remedies available in the courts of the

State."  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement demands that a

petitioner "fairly present" each claim in his petition to each level of the state courts,

including the highest state court empowered to consider it.  See 28 U.S.C. § 2254(c) ("An

applicant shall not be deemed to have exhausted the remedies available in the courts of

the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"); O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999).  In order for a claim "to have been 'fairly presented' to the state courts, . . . it must be the substantial equivalent of that presented to the state courts.  In addition, the state courts must have available to it the same method of legal analysis as that to be employed in federal court."  Werts, 228 F.3d at 192; see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) ("The exhaustion requirement ensures that state courts have the first opportunity to review convictions and preserves the role of state courts in protecting federally guaranteed rights").  The habeas petitioner bears the burden of showing that his or her claims have been "fairly presented" to the state courts, and that the habeas claims are the "substantial equivalent" of those presented to the state courts. Santana v. Fenton, 685 F.2d 71, 74 (3d Cir. 1982), cert. denied, 459 U.S. 1115 (1983).

The exhaustion requirement may be excused if it would be futile for the petitioner to seek relief in the state court system, or if the particular circumstances of the case render the state process ineffective to protect the petitioner's rights.  28 U.S.C. § 2254(b)(1)(B); see also Szuchon v. Lehman, 273 F.3d 299, 323 n.14 (3d Cir. 2001) ("Exhaustion will be excused as 'futile' if 'the state court would refuse on procedural grounds to hear the merits of the claims') (quoting Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)); Werts, 228 F.3d at 192 (same).

Where a petitioner fails to comply with state procedural rules and is barred from

litigating a particular constitutional claim in state court, the claim may nevertheless be considered on federal habeas if the petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Edwards v. Carpenter, 529 U.S. 446, 451 (2000) ("We . . . require a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim") (emphasis in original). Also, a petitioner may raise a claim in federal habeas proceedings if the state has waived or declined to rely on the procedural default. See Hull v. Kyler, 190 F.3d 88, 97 (3d Cir. 1999) (citations omitted).

The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Prejudice means that the errors at trial "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494; Werts, 222 F.3d at 193. The petitioner bears the burden of establishing cause and prejudice. Coleman, 501 U.S. at 749-50.

In order to satisfy the "fundamental miscarriage of justice" exception, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298,

16

326-327 (1995) (citing <u>Murray</u>, 477 U.S. at 496); <u>Werts</u>, 228 F.3d at 193.  To satisfy the "actual innocence" standard, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  <u>Schlup</u>, 513 U.S. at 326-327.

Here, Petitioner never presented the Pennsylvania state courts with a claim of ineffective assistance of counsel for failing to obtain an expert witness to testify regarding suggestive interview techniques with children.  Because Petitioner did not fairly present this claim to the state courts, the claim is unexhausted.[6]  <u>Werts</u>, 228 F.3d at 192; <u>Lines</u>, 208 F.3d at 159.  The only way in which Petitioner could present this claim in the state courts at this time is by filing another PCRA petition.  <u>See Lines</u>, 208 F.2d at 164 and n.17.  Under Pennsylvania law, PCRA petitions must be filed within one (1) year of the date the convictions became final.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 9545(b); <u>Commonwealth v. Fahy</u>, 737 A.2d 214, 218 (Pa. 1999).  This one- (1-) year period has passed, and Pennsylvania law clearly forecloses state court review of Petitioner's unexhausted claim.  <u>See Larkins</u>, 208 F.3d at 164.  Because Petitioner's claim is "'clearly foreclosed' from further state review," exhaustion would be futile and is excused.  <u>See</u> <u>Szuchon</u>, 273 F.3d at 323 n.14; <u>Lines</u>, 208 F.3d at 165.

Although exhaustion has been excused, this claim is procedurally defaulted.

---

[6]Respondent did not raise the issue of exhaustion and/or procedural default with regard to this, or any other, claim.  However, a District Court has the discretion to raise the issue <u>sua sponte</u>.  <u>See</u> <u>Sweger v. Chesney</u>, 2002 WL 1389973, at *11 (3d Cir. June 27, 2002).

Teague, 489 U.S. at 308. Petitioner has failed to make a showing of cause and prejudice

sufficient to excuse the default. In addition, Petitioner has failed to show that failure to

excuse the default will result in a fundamental miscarriage of justice. Therefore, we find

this aspect of Petitioner's ineffectiveness claim to be procedurally defaulted. Schlup, 513

U.S. at 327; Coleman, 501 U.S. at 750.

### 4.    *Ineffectiveness of Appellate Counsel on Direct Appeal*

Petitioner next argues that appellate counsel was ineffective failing to include a

copy of Dr. DiGiacomo's deposition as part of the court record on appeal to the

Pennsylvania Superior Court, thereby undermining the Superior Court's ability to

determine whether trial counsel provided effective representation. Petitioner also argues

that appellate counsel was ineffective for failing to raise all claims of ineffectiveness of

trial counsel on direct appeal.

The Strickland test also applies to claims of ineffective assistance of appellate

counsel. Petitioner is first required to show that appellate counsel's actions fell outside

"the wide range of reasonable professional assistance; that is, [Petitioner would have to]

overcome the presumption that, under the circumstances, the challenged action 'might be

considered sound [appellate] strategy.'" Buehl, 166 F.3d at 173 (citing Strickland, 466

U.S. at 689); see Smith v. Murray, 477 U.S. 527, 536 (1986) (stating that the "process of

'winnowing out weaker arguments on appeal and focusing on' those more likely to

prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy")

(quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751-752 (1983)).  After overcoming the presumption of reasonableness, Petitioner must then show that the deficient representation of appellate counsel prejudiced him.  <u>Id.</u>

Here, there is no question that appellate counsel failed to include a copy of Dr. DiGiacomo's deposition as part of the court record on appeal to the Pennsylvania Superior Court, and that this omission constituted a violation of state procedural law.  <u>See</u> <u>Commonwealth v. Dutton</u>, 4023 PHL 96, at 9 (Pa. Super. July 9, 1997) (citing <u>Commonwealth v. Muntz</u>, 630 A.2d 51 (Pa. Super. 1993) (stating appellant has responsibility to offer complete record for purposes of appellate review, and claim is considered waived if dependent upon materials not provided in the certified record).  However, after noting appellate counsel's failure to attach the deposition notes, the Superior Court reached the merits of Petitioner's claim by way of other evidence presented regarding the information contained in R.D's medical statements.  In so doing, the Superior Court  found that Petitioner failed to establish that he was prejudiced by the absence of Dr. Giacomo's testimony, and that trial counsel was not ineffective because counsel had stated a reasonable basis for not calling Dr. Giacomo.  <u>See</u> <u>Commonwealth v. Dutton</u>, 4023 PHL 96, at 9 (Pa. Super. July 9, 1997).

We conclude that appellate counsel's failure to attach Dr. DiGiacomo's deposition on appeal did not prejudice Petitioner because sufficient evidence existed concerning R.D.'s statements to Dr. DiGiacomo for the Superior Court to be able to reach the merits

of Petitioner's ineffectiveness claim without the deposition transcript.[7]  Therefore, we find

that Petitioner is not entitled to relief on this claim.[8]  See Strickland, 466 U.S. at 697.

### 5.    Ineffectiveness of PCRA Counsel

In his last ineffectiveness claim, Petitioner argues that PCRA counsel was

ineffective for failing to layer claims of ineffectiveness of all prior counsel.  Ineffective

assistance of counsel in a discretionary appeal under state collateral proceeding does not

provide a basis for federal habeas corpus relief because there is no federal constitutional

obligation to provide a collateral appeal process, and because a criminal defendant has no

constitutional right to appointed counsel beyond his first appeal of right.  See Coleman v.

Thompson, 501 U.S. 722 (1991); Pennsylvania v. Finley, 481 U.S. 551 (1987); Evitts v.

Lucey, 469 U.S. 387 (1985).  Therefore, Petitioner is not entitled to relief on this claim.

### B.    Due Process Claims – Unexhausted and Procedurally Defaulted

Petitioner also argues that his due process rights were violated when the trial court

admitted R.D.'s testimony at trial, allegedly because the testimony was coerced by

suggestive interview techniques; when the trial court excluded statements made by R.D.

---

[7]In any event, counsel attached the transcript when raising the same claim before the
Pennsylvania Supreme Court.

[8]In addition, as discussed infra, we find no merit in the underlying claims of
ineffectiveness of trial counsel.  Appellate counsel cannot be deemed ineffective for failing to
preserve a meritless issue for appellate review.  See Buehl, 166 F.3d at 173-174.  Thus, Petitioner
cannot show that appellate counsel's decision not to raise the aforementioned ineffectiveness
claims fell outside the "range of reasonable professional assistance," nor can Petitioner satisfy the
prejudice prong of the Strickland standard.  See id. (citing Strickland, 466 U.S. at 689).

to physicians, nurses and a social worker, which allegedly implicated Uncle V.I. in the assault; and when trial counsel offered allegedly perjured testimony during post-trial hearings. Respondent counters that these claims are meritless.

Petitioner did not raise any of these claims on direct or collateral appeal, nor did he "fairly present" these claims to each level of the state courts, including the highest state court empowered to consider them. 28 U.S.C. § 2254(c); O'Sullivan, 526 U.S. at 848; Werts, 228 F.3d at 192. Therefore, these claims are unexhausted and procedurally defaulted for the reasons previously discussed. Moreover, because Petitioner has failed to show cause and prejudice for the default of these claims, or that failure to excuse the default will result in a fundamental miscarriage of justice, Petitioner's due process claims are not subject to review on the merits. Schlup, 513 U.S. at 327; Coleman, 501 U.S. at 750.

Accordingly, I make the following:

## **R E C O M M E N D A T I O N**

AND NOW, this        day of November, 2002, IT IS RESPECTFULLY

RECOMMENDED that the petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 be DENIED.  There has been <u>no</u> substantial showing of the denial of a

constitutional right requiring the issuance of a certificate of appealability.

—

_____

      PETER B. SCUDERI
      UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MELVIN PRICE DUTTON, III           :        CIVIL ACTION
                                   :
                v.                 :
                                   :
DONALD T. VAUGHN, et al.           :        No. 02-2686

**O R D E R**

AND NOW, this        day of                    , upon careful and

independent consideration of the petition for a writ of habeas corpus filed pursuant to 28

U.S.C. § 2254, and after review of the Report and Recommendation of United States

Magistrate Judge Peter B. Scuderi, and any objections made thereto, IT IS ORDERED

that:

    1.  The Report and Recommendation is APPROVED and ADOPTED.

    2.  The petition filed pursuant to 28 U.S.C. § 2254 is DENIED.

    3.  There is <u>no</u> basis for the issuance of a certificate of appealability.

BY THE COURT:

_____
MARY A. MCLAUGHLIN, J.